Dennis M. Cusack (State Bar No. 124988)
Katina Ancar (State Bar No. 207950)
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Plaintiff
CENTILLIUM COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CENTILLIUM COMMUNICATIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ATLANTIC MUTUAL INSURANCE COMPANY,<br><br>Defendant. | Case No. No. 4:06-cv-07824-SBA<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: October 2, 2007<br>Time: 1:00 p.m.<br>Place: Courtroom 3, 3rd Floor<br>Judge: Hon. Saundra Armstrong<br><br>Complaint Filed: December 21, 2006<br>Trial: May 12, 2008 |

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. ATLANTIC'S FOCUS ON FACTUAL DISPUTES AFFECTING COVERAGE MERELY ESTABLISHES ITS DUTY TO DEFEND ..... 2

A. Accton Alleged And Pursued Damages For Physical Injury To Components Other Than Centillium's Chips ..... 3

B. The Demurrer Did Not Eliminate The Factual Allegations That Created The Potential For Covered Damages ..... 6

C. Accton's Customer Notice Did Not Trigger the Recall Exclusion ..... 8

D. The Impaired Property Exclusion Does Not Defeat Atlantic's Duty to Defend ..... 10

E. The "Your Product" And "Your Work" Exclusions Are Inapplicable To The Alleged Physical Damage To The Capacitor And L13 Wire ..... 12

III. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Anthem Electronics, Inc. v. Pacific Employers Insurance Co.*, 302 F.3d 1049 (2002) ..... 4, 7, 11

*Atmel Corp. v. St. Paul Fire & Marine Co.*, 430 F. Supp. 2d 989 (N.D. Cal. 2006) ..... 5, 6

*Seagate Tech. v. St. Paul Fire & Marine Insurance Co.*, 11 F. Supp. 2d 1150 (N.D. Cal. 1998) ..... 5, 6

*Transcontinental Insurance Co. v. Ice System of America, Inc.*, 847 F. Supp. 947 (M.D. Fla. 1994) ..... 11

### STATE CASES

*Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825 (1997) ..... 2

*Armstrong World Industrial, Inc. v. Aetna Casualty and Surety Co.*, 45 Cal. App. 4th 1 (1996) ..... 8, 9

*Bright Wood Corp. v. Bankers Standard Insurance Co.*, 665 N.W.2d 544 (2003) ..... 9, 10

*Buss v. Superior Court*, 16 Cal. 4th 35 (1997) ..... 2

*California Union Insurance Co. v. Club Aquarius*, 6 Cal. 4th 243 (1993) ..... 7

*F&H Construction v. ITT Hartford Insurance Co. of the Midwest*, 118 Cal. App. 4th 364 (2004) ..... 5, 6

*Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263 (1966) ..... 2, 3

*Honig v. Financial Corp. of America*, 6 Cal. App. 4th 960 (1992) ..... 7

*Horace Mann Insurance Co. v. Barbara B.*, 4 Cal. 4th 1076 (1993) ..... 2, 3

*Montrose Chemical Corp. v. Admiral Insurance Co.*, 10 Cal. 4th 645 (1995) ..... 5

*Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287 (1993) ..... 2, 3, 4, 7

*Ringler Associate, Inc. v. Maryland Casualty Co.*, 80 Cal. App. 4th 1165 (2000) ..... 2

## TABLE OF AUTHORITIES

**Page**

*Vandenburg v. Superior Court*,
21 Cal. 4th 815 (1999) .......... 6, 7

## I. INTRODUCTION

Both the Accton complaint and subsequent discovery demonstrate that the suit raised a potential for covered "property damage" under Atlantic's commercial general liability (CGL) Policy.[1] Throughout the complaint Accton alleged that Centillium's chips failed and damaged other component parts of its modem. Discovery confirmed these contentions. The allegations remained intact despite the Superior Court's ruling on the demurrer, which neither adjudicated nor struck the property damage allegations from the complaint or the case.

Although alleging a "recall," at the same time Accton stated that it allowed customers to return only failed modems, thus placing Accton's claims outside the Policy's "recall" exclusion. Discovery verified again and again that Accton's customer notice authorized modem returns only if the modem failed. Moreover, damages testimony revealed that Accton sought compensation for modems returned even before Accton issued its customer notice about the problem.

Atlantic's effort to rebut these facts only leads to the conclusion that, at best, disputed factual issues existed as to both the presence of covered property damage, and whether the Policy's "recall" exclusion applied. Under California insurance coverage law, however, disputed factual issues *establish* the duty to defend *as a matter of law*.

Centillium here withdraws its motion for partial summary judgment to the extent that it seeks a ruling as to the duty to defend under the 2005-06 technology errors and omissions policy. Despite leading Centillium to believe that Atlantic Mutual did continue to be responsible for the 2005-06 policy issued under the name of its (once) wholly-owned subsidiary, Atlantic Specialty, Atlantic waited until just weeks after Centillium filed this motion to disclose that it believes it is not responsible for the errors and omissions policy at issue in this action. (The facts relating to this issue are set forth in Centillium's Opposition to Atlantic Mutual's Motion for Summary Judgment.) Due to this recent assertion, Centillium has not yet been able to confirm Atlantic's belated contention. Therefore, Centillium withdraws that part of its motion relating to the technology errors and omissions policy, and requests that the Court continue the hearing on

[1] The facts on which Centillium relies are fully set forth in Centillium's Motion for Partial Summary Judgment, and in its Opposition to Atlantic Mutual's cross-motion for Summary Judgment.

Atlantic's motion for partial summary judgment as to the technology errors and omissions policy.

## II. ATLANTIC'S FOCUS ON FACTUAL DISPUTES AFFECTING COVERAGE MERELY ESTABLISHES ITS DUTY TO DEFEND

In a lawsuit between an insurer and its insured over the insurer's duty to defend, the insurer carries an onerous burden on summary judgment. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993). To be entitled to summary judgment, the insurer must demonstrate through undisputed facts *the complete absence of any potential for coverage*. *Id.* If the complaint or extrinsic evidence raises the potential for covered damages, the insurer must defend the entire case. *Buss v. Superior Court*, 16 Cal.4th 35, 48-49 (1997). A factual dispute regarding coverage *indisputably establishes a potential* for coverage, and thus the duty to defend. *Amato v. Mercury Cas. Co*., 53 Cal.App.4th 825, 830-832 (1997). A carrier may not therefore use the very factual dispute that mandates a defense as a shield from its duty to defend. Rather "[a]ny doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993).

The carrier is not the arbiter of disputed facts regarding coverage. Even though coverage may be ambiguous, doubtful, or in dispute, an insurer must provide "the full protection" of "an immediate" defense, until the factual issues are adjudicated and resolved. *Montrose*, 6 Cal.4th at 295, 300; *Ringler Assoc., Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1186 (2000). Thus, the carrier must defend its insured and can abandon that defense if and only if it is able to conclusively refute the potential for coverage by undisputed facts. *Montrose*, 6 Cal.4th at 299.

Here, the Accton complaint on its face alleged potentially covered property damage – i.e., physical injury to components other than Centillium's chip. The strict liability cause of action may have been dismissed, but as subsequent discovery illustrated, Accton's *factual* allegations of covered property damage did not disappear. The duty to defend depends on the facts alleged in the complaint or outside the complaint, and not on the formal causes of action pled. *Montrose*, 6 Cal.4th at 296; *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 276 (1966). The dismissal (with leave to amend) of the strict liability cause of action therefore did not eliminate the potential for covered damages.

The complaint also raised factual issues about the nature of the alleged "recall" and thus about the applicability of the Policy's "product recall" exclusion. Later discovery into the basis for Accton's damages claims showed that Accton only took back and repaired apparently defective modems. Indeed, as even Atlantic's cited evidence shows, customers returned more than 6,000 modems during 2003, well *before* any customer notice went out. (Leach Decl., Ex. F.) Accton also sought damages related to the return and repair of those modems. *Id.*

As the record on these cross-motions demonstrates, Atlantic cannot prove by undisputed facts the absence of any potential for covered property damage. By highlighting these factual disputes, Atlantic has established as a matter of law its duty to defend the Accton suit under the CGL policy.

### A. <u>Accton Alleged And Pursued Damages For Physical Injury To Components Other Than Centillium's Chips</u>

Atlantic raises two strawman arguments to try to avoid its duty to defend: that Accton sought only "economic damages," and that the mere incorporation of a defective product does not constitute "property damage." Both arguments ignore the facts here and are demonstrably inapplicable. This is not a case in which an insured's product was alleged merely to be defective. Accton alleged and tried to prove that the Centillium chip caused physical damage to other components, and that Accton suffered damages as a result.

"Property damage" is defined in the Policy as:

- Physical injury to tangible property, including all resulting loss of use of that property; or
- Loss of use of tangible property that is not physically injured.

(Cusack Decl., Ex. D at 13.) The Accton complaint expressly alleged that the Centillium chip damaged other parts of the Accton modem: "the chips damaged other component parts and the HR-10 routers." (Cusack Decl., Ex. A at ¶ 40.) These allegations alone raise the potential for covered "physical injury to tangible property" under the Policy. *Montrose*, 6 Cal.4th at 300 ("a bare 'potential' or 'possibility' of coverage" is sufficient to trigger duty to defend); *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1083 (1993)(complaint's mere allegations of negligent

nonsexual contact with student sufficient to trigger insurer's duty to defend).

Mac Lin's testimony confirmed the potential that Accton would recover damages because of physical injury to the modem's component parts other than the Centillium chip. The consequences of the alleged chip lock-up included physical damage to the capacitor and the L13 wire. These facts, although external to the complaint, establish the potential for covered "property damage" under the Policy. *Montrose,* 6 Cal.4th at 295 – 96 (extrinsic evidence of potentially covered damages necessitates that insurer defend).

The Ninth Circuit addressed the duty to defend in a similar product defect case in *Anthem Electronics, Inc. v. Pacific Employers Ins. Co.,* 302 F.3d 1049 (2002). *Anthem* involved a policyholder who manufactured electronic circuit boards. When incorporated into scanners and exposed to certain conditions, the allegedly defective circuit boards caused the scanners to stop working. *Id.* at 1052. As a result, the insured faced claims including breach of contract, negligence, breach of implied warranty of merchantability, and negligent misrepresentation.

Like Atlantic, the insurer refused to defend, asserting that there was no potential for covered property damage. *Id.* The Court agreed with *Anthem* that the alleged scanner failures could result in a finding of property damage, defined *either* as physical injury to tangible property *or* loss of use of tangible property that has not been physically injured. The Court distinguished cases in which the insured's product was merely alleged to be defective, without any allegation of injury to other property. "[L]iability coverage comes into play when the insured's defective materials or work *cause injury to property other than the insured's own work or products."* *Id.* at 1057 (emphasis original). In *Anthem*, the insured's product was alleged to have caused property damage, in the form of loss of use of other property, entitling Anthem to a defense of the claims. *Id.* at 1056. Here, Centillium faced allegations that its chips caused physical injury to other components of Accton's modems. Under *Anthem*, Atlantic owed a duty to defend.

*Anthem* also addressed and rejected the same argument Atlantic makes here that Accton sought only "economic loss." *Anthem* pointed out that the same cases cited by Pacific Employers in that case, and Atlantic here, only hold that tangible property must be affected to meet the definition of property damage. *Id.* at 1056-57. Here, tangible property, in the form of component

parts of Accton's modems, was allegedly physically injured, thus meeting the definition of "property damage."

Atlantic makes no effort to distinguish this controlling Ninth Circuit Court of Appeal authority. Instead, Atlantic relies on *F&H Construction v. ITT Hartford Ins. Co. of the Midwest*, 118 Cal.App.4th 364 (2004) and two district court opinions: *Seagate Tech. v. St. Paul Fire & Marine Ins. Co.*, 11 F.Supp.2d 1150 (N.D. Cal. 1998) and *Atmel Corp. v. St. Paul Fire & Marine Co.*, 430 F.Supp.2d 989 (N.D. Cal. 2006).

The district court's opinion in *Seagate* presents facts diametrically opposed to Centillium's circumstances. There, the insured manufactured defective computer hard drives. However, the complaint failed even to "suggest[] that components of the host computer other than the Seagate drives, suffered damage." *Seagate*, 11 F.Supp.2d at 1155. Nor did the district court identify extrinsic evidence demonstrating that the hard drives "inflict[ed] physical injury" or "actually damage[d] other parts of the computer." *Id.* Without this information, the court concluded the carrier did not have a duty to defend. *Id.* The complaint and subsequent discovery in the Accton suit, however, provide the elements lacking in *Seagate*: alleged physical injury to other parts of the Accton modem other than the Centillium chip – the capacitor and L13 wire. These allegations establish the potential for coverage under the CGL Policy.

Neither *F&H* nor *Atmel* addresses the carrier's duty to defend potentially covered claims. Furthermore, a carrier's duty to defend is unaffected by a *later* determination that the ultimate judgment or settlement falls outside the policy's coverage. *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 655 n. 9 (1995). Finally, neither of these rulings involves suits suggesting the existence of physical injury constituting "property damage" under the policy. As a result, Atlantic's reliance on these authorities to bolster its denial of a defense is misplaced.

In *F&H Construction*, the insured did not claim that the carrier had breached its duty to defend. Instead, the carrier sought coverage for a *default judgment* against it. *F&H Construction*, 118 Cal.App.4th at 368. There, the insured mistakenly delivered "pile caps" containing grade A-36 steel, rather than the grade A-50 steel that contractor had requested. After bracing the lower-grade caps, the contractor sued the insured. The California Court of Appeal concluded that,

because the lower grade steel pile caps did not damage any other part of the building, there was no "property damage" as defined by the policy – and thus no coverage. *Id.* at 373 – 374. Contrary to the inadequate pile caps, the Centillium chip allegedly caused physical injury to other parts of the Accton modem – the capacitor and L13 wire. (Cusack Decl., Ex M at 73 – 75.) That damage falls squarely within the *F&H Construction* "property damage" description and is potentially covered under the Atlantic Policy. *Id.* at 372.

The district court's ruling in *Atmel* is also inapposite to Centillium's circumstances. Like *F&H Construction*, *Atmel* did not address the carrier's breach of its duty to defend. *Atmel*, 430 F.Supp.2d at 995 ("whether the *Seagate* complaint raised the [potential for] coverage under the CGL policies [is] a question not addressed by this order").[2] In addition, Centillium seeks a defense of a suit alleging "physical injury to tangible property" under the Policy's property damage definition. As Atlantic acknowledges, in *Atmel* the insured sought coverage for "*loss of use of tangible property that has not been physically injured*" – a separate and distinct basis for coverage under the Policy's property damage definition. Atlantic's MPA in Opposition at 13:9:-10 ("the *Atmel* court rejected this 'loss of use' argument"). Consequently, the *Atmel* opinion does not support Atlantic's argument.

### B. **<u>The Demurrer Did Not Eliminate The Factual Allegations That Created The Potential For Covered Damages</u>**

The potential for coverage was unaffected by the Superior Court's dismissal of the strict liability cause of action. The court did not strike the factual allegations of damage to components other than Centillium's chip from any of Accton's remaining causes of action. Accton continued to seek damages for this alleged harm as part of, for example, its breach of contract cause of action. (Cusack Decl., Ex. A at ¶¶ 15-18); *Vandenburg v. Superior Court*, 21 Cal.4th 815, 841 (1999) (duty to defend triggered by allegations of potentially covered property damage in breach of contract cause of action). Thus, despite the court's ruling that the complaint did not state a

[2] In fact, in a subsequent order in that same case, the court granted an Atmel motion in limine, effectively finding that *St. Paul did owe a duty to defend*, by precluding St. Paul from offering any evidence or argument at trial that the complaint against Atmel did not raise the potential for covered damages. (Final Pretrial Scheduling Order in *Atmel Corp. v. St. Paul*, No. 04-4082 SI, slip op. at 4 (N.D. Cal. April 27, 2006), attached to accompanying Declaration of Katina Ancar.)

viable *strict liability* cause of action, Accton's property damage *allegations* remained intact. *Id.* at 840-841 (duty to defend depends on facts alleged, not on the injured party's choice of remedy).

Moreover, the court's determination that the complaint did not allege damage to other property "clearly or sufficiently" enough for strict liability, did not apply the standard applicable to the duty to defend. *Montrose*, 6 Cal.4th at 300 (bare possibility of coverage sufficient).

Centillium vigorously defended the Accton suit by in part arguing that the capacitor (not the Centillium chip) caused the Accton modems to stop working; however, Accton just as relentlessly argued the opposite – that the Centillium chip damaged the capacitor. Accton reiterated its contentions of physical injury during discovery, alleging liability for the damage to the capacitor and L13 wire. Over the course of nine months, Accton's former product engineer Mr. Lin twice testified that the Centillium chip damaged the modem's other parts. (Cusack Decl., Exs. M, N.)

Accton's damages calculations, moreover, included expenses for replacing both the Centillium chip and the capacitors allegedly damaged by the chip. Accton's damages witness testified that the figures included the cost of replacing capacitors allegedly damaged by the Centillium chips as identified by a specific date code. Thus, even if the precise allegation of damage to components other than the Centillium chip did not survive in the complaint itself after the ruling on the demurrer, the factual allegation remained in the case and exposed Centillium to potentially covered liability under other causes of action. *Montrose*, 6 Cal.4th at 299 (duty to defend triggered by facts alleged in complaint *or if complaint could be amended to allege covered liability*); *Anthem,* 302 F.3d at 1054 (duty to defend may arise when facts are alleged in the case which could support an amendment to the complaint) (citing *Montrose*); *Honig v. Financial Corp. of Am.*, 6 Cal.App.4th 960, 925 (1992) (abuse of discretion to deny amendment to conform to proof at trial where defendant "alerted . . . by the factual allegations, no matter how framed").

*California Union Ins. Co. v. Club Aquarius*, 6 Cal.4th 243 (1993), does not help Atlantic. There, an adjudication *of facts* at trial eliminated the potential for covered damages. The insurer successfully sought to withdraw its defense *going forward*, because the potential for coverage no longer existed. *Id.* at 247. Unlike findings *at the trial phase*, the Superior Court's ruling on the

demurrer did not "establish" facts or law eliminating the potential for Accton to recover damages – either as part of its breach of contract claim or through an amended claim for strict liability – for the cost to repair or replace the damaged capacitors and L13 wires. As discovery subsequently showed, the court did not strike from the complaint or the litigation Accton's contentions that Centillium's chips damaged other modem components. Accton simply chose to pursue those allegations outside of a strict liability claim. Because the complaint and other available facts establish the existence of a potential for coverage, Atlantic is liable for its wrongful denial.

**C. <u>Accton's Customer Notice Did Not Trigger the Recall Exclusion</u>**

The Policy's product recall, or "sistership," exclusion does not excuse Atlantic's failure to defend. Both the complaint and the evidence adduced in discovery demonstrate that, at best, a disputed issue of fact existed about whether Accton's "recall" fell within the scope of the Policy's recall exclusion. The factual dispute without more confirms Atlantic's duty to defend.

The recall exclusion by its terms only applies if "the product . . . is withdrawn or recalled from the market or from use . . . ." Accton's damages calculations demonstrate that it sought compensation for modems that customers returned months before it issued the customer notice. Damages associated with repairing these modems are beyond the reach of the recall exclusion.

Accton issued the misnamed "recall" notice in January 2004. Accton's complaint alleged expenses for repairing modems sent back due to the notice. But discovery showed that Accton included in its damages calculations the cost of repairing thousands of modems returned in 2003. (Leach Decl, Ex. F). These repairs occurred well before the customer notice requesting that customers return apparently failed modems. Because Accton incurred these costs for modems returned before issuing the mislabeled customer notice, under no conditions are these damages subject to the Policy's recall exclusion.

As to those modems returned *after* the customer notice, *Armstrong World Indus., Inc. v. Aetna Cas. and Surety Co.*, 45 Cal.App.4th 1 (1996), remains the instructive California authority verifying the inapplicability of the recall exclusion to circumstances in which, as with the Centillium chip, a product causes *actual physical damage*. Instead, the exclusion is directed at withdrawal from the market as a preventative measure without any evidence of actual defect. In

*Armstrong*, the insurer argued that the product recall exclusion barred coverage for the costs of removing asbestos from buildings. The insurer argued that the asbestos had not yet caused *actual damage*, and was merely a prospective health risk; therefore the company's actions were analogous to a product recall. *Id.* at 113. The court rejected this argument. Because the court had already determined that the presence of asbestos constituted property damage, the insured's restorative efforts were not "preventative or curative action." Instead, these actions represented measures to repair actual damage caused by its product. *Id.*

Although Accton alleged that it issued a "public recall notice," it also alleged that it only incurred costs for the return and repair of *failed* modems. (Cusack Decl., Ex. A ¶ 11.) The complaint on its face, therefore, created a factual question about what Accton meant by a "recall." Additional discovery confirmed that Accton made no general appeal for the return of all Accton modems containing the Centillium chip. To the contrary, Accton issued a notice advising end-users to return the modem for warranty repair *only if they experienced internet connectivity problems*. (Cusack Decl., Ex. P at 294:8-14; Ex. L at 5:28-6:3.)

The Minnesota court of appeals opinion, *Bright Wood Corp. v. Bankers Standard Ins. Co.*, 665 N.W.2d 544 (2003), on which Atlantic relies, only further demonstrates that the recall exclusion is inapplicable to Accton's authorization the return of only those modems experiencing actual symptoms of failure. Bright Wood manufactured wooden window sashes. A window manufacturer contracted with Bright Wood to supply sashes treated with a preservative to prevent rot. After Bright Wood began supplying the sashes, it realized the sashes were *untreated* and began treating all additional sashes. Only after receiving numerous complaints of rotting windows did the manufacturer learn that *some* sashes were untreated. Unable to determine which sashes were untreated (and therefore likely to rot), the manufacturer undertook the task of replacing *every* window sash to prevent the risk of future damage from rot. *Id.* at 546 – 547. In the ensuing coverage suit, the carrier contended that the removal of all sashes without consideration for any actual damage from rot constituted a recall, precluding coverage under the recall exclusion. Under those circumstances, the court agreed with the insurer. *Id.* at 549-550.

Unlike *Bright Wood*, Accton did not withdraw all of its modems from the market as a

preventative measure, regardless of actual damage. *Id.* at 549 (recall exists only where the purpose is "to prevent future failures"). Rather, Accton's announcement solicited the return of only those modems that were apparently not working – and thus had *already failed*. (Cusack Decl., Ex. L at 6:23-25.) Accton never intended, nor did it issue a notice for, the return of *every* modem regardless of a customer's symptoms of failure. (Cusack Decl., Ex. P at 294:8-14.)

Each of Mr. Fai Long (Frank) Kuo's written interrogatory responses describe the return of only those modems that had failed. Although in his deposition via interpreter, Mr. Kuo appeared confused as to his verified interrogatory responses, Accton did not amend its written discovery. Mr. Kuo's contradictory testimony, at best, creates only a disputed issue of fact. Atlantic cannot conclusively eliminate the potential for coverage simply by ignoring these facts in the record.

Furthermore, all other discovery confirmed Mr. Kuo's written response that the term "recall" was in fact a misnomer. Mr. Jack C. Weaver's testimony describing the testing of some returned modems corresponds with this account. When Accton received returned modems, Mr. Weaver stated that every Centillium chip marked with the relevant "date code" and all capacitors were replaced. (Leach Decl. Ex. E at 46-48.) Atlantic mistakenly argues that the replacement of each chip and capacitor in the returned modems proves that the modems were "recalled" – i.e., returned regardless of whether the modem was operational. By doing so, Atlantic confuses the *repairs* made after the return with the *reason* for the return. Customers sent back modems only if they experienced difficulties maintaining internet connection. By virtue of their return, Accton had evidence that the Centillium chips had failed and damaged the capacitors. After accepting the failed modems, Accton therefore replaced *both* the Centillium chip and capacitor. (Cusack Decl., Ex. O at 135:4-14; Ex. L at 3:15-17, 4:12-18.)

Accton's testimony and responses during discovery confirm that Accton mistakenly used the term "recall" to describe its customer notice. At best, the evidence reveals a dispute of fact. Atlantic cannot disregard the potential for coverage that results from conflicting facts to absolve itself of its duty to defend.

### D. <u>The Impaired Property Exclusion Does Not Defeat Atlantic's Duty to Defend</u>

The Policy's "impaired property exclusion" is not relevant to Accton's allegations of

property damage, defined as "physical injury to tangible property." That exclusion only applies to "loss of use" property damage claims, not to property damage claims based on "physical injury to tangible property." (*See* two-pronged definition of "property damage," set forth above at p. 4.) The exclusion applies where the alleged "property damage" was solely for "loss of use of tangible property which has not been physically injured." (Cusack Decl., Ex. D at 4.) Accton alleged that the Centillium chip caused physical damage to other constituent parts of the Accton modem. (Cusack Decl., Ex. A ¶ 40.) For this reason, the exclusion does not apply to these allegations of property damage.

Furthermore, the exclusion does not apply because the Accton modems could not be restored solely by the "repair, replacement, adjustment or removal of [the Centillium chip]." In deposition, Accton's former product engineering director, Mac Lin, described how the modem could only be restored to use by replacing both the Centillium chip and the damaged capacitor and L13 wire. (Cusack Decl., Exs. M, N.) The "impaired property" exclusion does not apply at all to these allegations.

*Transcontinental Ins. Co. v. Ice Sys. of Am., Inc.*, 847 F.Supp. 947 (M.D. Fla. 1994) illustrates that the exclusion is inapplicable to Accton's property damage allegations. The *Transcontinental* insured sought coverage for damages suffered when it was sued for failing to provide an ice rink suitable for use by an ice hockey team. *Id.* at 950. The team did not assert that the insured had damaged its tangible physical property. *Id.* Accton, however, consistently asserted that the Centillium chip caused injury to other constituent parts of the Accton modem. These allegations place Accton's suit outside both the confines of the *Transcontinental* case and the impaired property exclusion.

Under *Anthem*, too, even if Accton's allegations were construed as encompassing a claim for "loss of use" of the modems, the potential for covered property damage still existed. The impaired property exclusion contains an exception, when the "loss of use" is caused by a "sudden and accidental physical injury to 'your product.'" *See Anthem*, 302 F.3d at 1059. The potential for a finding that the Centillium chip failed because of a sudden and accidental physical injury to it existed at the outset, triggering the duty to defend.

### E. **<u>The "Your Product" And "Your Work" Exclusions Are Inapplicable To The Alleged Physical Damage To The Capacitor And L13 Wire</u>**

Centillium manufactured neither the capacitor nor the L13 wire. Accton independently incorporated these component parts into its modem without Centillium's participation. (Jochnowitz Decl. ¶ 3.) As a result, while the cost of replacing the Centillium chip itself would fall within the "your product" exclusion, the costs to replace the Gloria capacitor and L13 wire do not fall within the Policy's exclusions for damage to "your product" or "your work." Rather, as discussed above, the Policy specifically offers coverage for damage to parts such as the capacitor and L13 wire that are the property of others.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Centillium requests that the Court:

1. Grant Centillium's motion for partial summary judgment on Atlantic's duty to defend under the CGL policy;

2. Deny Atlantic's motion for summary judgment, or in the alternative, partial summary judgment on Atlantic's duty to defend under the CGL policy;

3. Continue the hearing date on the parties' motions regarding the technology errors and omissions policy until after Centillium has amended its complaint to include OneBeacon/Atlantic Specialty and has had a reasonable amount of time to obtain information and documents confirming the identity of the carrier issuing the errors and omissions policy.

Dated: September 18, 2007

FARELLA BRAUN & MARTEL LLP

By: <u>/s/ Katina Ancar</u>
Katina Ancar

Attorneys for Plaintiff
CENTILLIUM COMMUNICATIONS, INC.