**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| CENTILLIUM COMMUNICATIONS, INC., | No. C 06-07824 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket Nos. 78, 80, 84, 97] |
| ATLANTIC MUTUAL INSURANCE CO. and ATLANTIC SPECIALTY INSURANCE CO., | |
| Defendant. | |
| AND RELATED COUNTER-CLAIMS and CROSS-CLAIMS | |

## INTRODUCTION

Before the Court is defendant Atlantic Specialty Insurance Co.'s Motion to Extend Time to Hear Plaintiff's Motion for Partial Summary Judgment [Docket No. 84]. Under Civil Local Rule 6-3, defendant requests the Court to extend the time to hear plaintiff's Motion for Partial Summary Judgment [Docket No. 80], from April 1, 2008 to June 17, 2008. Under Civil Local Rule 6-3(d), the Court finds this matter appropriate for resolution without a hearing. Because plaintiff Centillium Communications, Inc. failed to meet and confer prior to filing its motion, as mandated by this Court's standing order, the Court STRIKES its motion, and DENIES defendant's motion and other related pleadings as moot.

## BACKGROUND

**I.     Developments before Serving Atlantic Specialty Insurance Co.**

From December 2002 to early 2003, plaintiff Centillium Communications, Inc. ("Centillium") sold semiconductor chips to Accton Technology Corporation ("Accton").[1] Docket

---

[1]     Accton is not a party to this matter.

No. 51 at 2:7-8 (Order dated 10/30/2007 disposing of cross mots. for summ. j.).  Acton installed the chips into wireless routers, and sold them to commercial customers, like Sharp, who complained the chips overheated and disconnected from the Internet.  *Id.* at 2:8-14, 17-22.  Centillium told Acton it knew about the problem.  *Id.* at 2:14-17.  Acton's customers had to recall the routers and return them to Acton, who then had to repair them, incurring approximately $4.5 million in charges.  *Id.* at 2:2-3:8.  On December 8, 2005, Accton sued Centillium in Alameda County Superior Court alleging various contract, warranty, and tort causes of action.  *Id.* at 3:9-16.

On January 4, 2006, Centillium tendered the Accton suit to Atlantic Mutual Insurance Co. ("Atlantic Mutual") and to Atlantic Specialty Insurance Co. ("Atlantic Specialty"), which Centillium believed was Atlantic Mutual's subsidiary.  *Id.* at 3:17-22; Docket No. 54 ¶ 22 (1st Am. Compl. ("FAC")).  Centillium sought coverage under a general commercial ("GC") liability policy for 2002 through 2004, issued by Atlantic Mutual, and it sought coverage under an errors and omissions ("E&O") policy, for 2005 and 2006, issued by Atlantic Specialty.  Docket No. 51 at 3:17-22.

On November 14, 2006, Atlantic Mutual denied coverage.  *Id.* at 4:4-5.  On December 21, 2006, Centillium sued Atlantic Mutual claiming breach of contract and breach of the implied covenant of good faith and fair dealing for refusing to defend or indemnify it.  *Id.* at 4:6-9.  In its answer, Atlantic Mutual did not deny coverage under the E&O policy, but disputed its authenticity. *Id.* at 4:9-11.  Centillium and Atlantic Mutual then filed cross-motions for summary judgment.  *Id.* at 6:16.  One month later, Atlantic Mutual advised Centillium that it had sold its Atlantic Specialty subsidiary in early 2004.  *Id.* at 3:22, 4:11-14.  On October 3, 2007, the Court denied Atlantic Mutual's motion and granted summary judgment for Centillium with respect to Atlantic Mutual's failure to defend under the GC policy.  *Id.* at 14:5-7.  Before the Court could rule on the E&O policy, however, the parties stipulated to allow Centillium to amend its complaint to name Atlantic Specialty as a defendant.  *Id.* at 16:5-6; *see* Docket No. 49.

**II.     Developments after Serving Atlantic Specialty, Insurance Co.**

On October 8, 2007, Centillium filed an amended complaint adding Atlantic Specialty as a defendant, and claiming breach of contract and breach of the implied covenant of good faith and fair dealing for refusing to defend or indemnify it.  *See* FAC at 1, 7, 9.  On October 31, 2007, Atlantic

1 Mutual answered, and cross-sued Atlantic Specialty for equitable indemnity and contribution. *See*
2 Docket No. 61 at 10-11 (Answer & Cross-Cl.).  On November 21, 2007, Atlantic Specialty answered
3 Centillium and countersued it for a declaration it had no duty to defend or indemnify. *See* Docket
4 No. 62 at 1, 20-21 (Answer & Counter-Cl.).

5     On November 21, 2007, the parties had a conference call.  Docket No. 88 ¶ 6 (Decl. of
6 Katina Ancar in Supp. of Mem. in Opp'n to Mot. ("Ancar Decl.")).  In this call, Centillium said it
7 had more than 25,000 pages of documents, some of which were in a foreign language, which were
8 covered by a protective order which Atlantic Specialty needed to sign before Centillium could
9 release them. *Id.* ¶ 7.

10     On November 26, 2007, the parties filed a Joint Case Management Statement which stated,
11 in part:

12     4.  MOTIONS

13         ....

14     The parties believe that a disputed issue of law remains regarding [Atlantic
15     Specialty]'s duty to defend the Accton Suit.  The parties anticipate cross-motions for
16     partial summary judgment on this issue.  The parties intend to file as soon as possible
17     and will attempt to coordinate on agreeable dates for cross-motions.

18 Docket No. 65 at 3:10-18 (Joint Case Mgmt. Stmt.).

19     On November 28, 2007, Atlantic Specialty's counsel asked Centillium's counsel to send it
20 the protective order requiring signature.  Ancar Decl., Ex. "A."  This same day the latter allegedly
21 sent it to the former, via e-mail.[2] *Id.*  As of December 5, 2007, the order apparently remained
22 unsigned. *Id.*, Ex. "B."

23     On December 11, 2007, Centillium answered Atlantic Specialty's counter-claim. *See* Docket
24 No. 68.  The next day, Atlantic Specialty answered Atlantic Mutual's cross-claim, and cross-claimed
25 against Atlantic Mutual for equitable indemnity and contribution. *See* Docket No. 69.
26 ///
27

28 [2]  Although Centillium has attached a purported copy of an e-mail to its opposition, there is no file name or file icon indicating the e-mail had an attachment.  Ancar Decl., Ex. "A."

3

On December 18, 2007, Atlantic Specialty signed the protective order allowing Centillium to produce to it, documents already produced to Atlantic Mutual or in the Accton suit. Docket No. 85 ¶ 11 (Decl. of Elizabeth L. Musser in Supp. of Mot. ("Musser Decl.")). On January 14, 2008, Atlantic Specialty received 60,000 pages of documents, apparently in Mandarin and Japanese. *Id.* ¶¶ 12, 14.

On January 14, 2008, Atlantic Mutual answered Atlantic Specialty's cross-claim. *See* Docket No. 72. On January 18, 2008, the Court issued a Case Management Scheduling Order, setting deadlines for discovery and dispositive motions of June 30, 2008 and September 9, 2008, respectively, and setting a pretrial conference set for November 4, 2008, and a jury trial for November 24, 2008. *See* Docket No. 74. On this same day, January 18, 2008, Centillium served its initial disclosures on Atlantic Specialty which allegedly contained all the documents cited in its motion for partial summary judgment. Ancar Decl. ¶ 8.

On February 22, 2008, Atlantic Specialty served its initial disclosures on Centillium. *Id.* ¶ 9. On February 26, 2008, Centillium filed a Motion for Partial Summary Judgment against Atlantic Specialty, and noticed a hearing for April 1, 2008. *See* Docket No. 80. Centillium did not meet and confer prior to filing or serving its motion. Musser Decl. ¶ 4. The motion was allegedly missing exhibits. *Id.* ¶¶ 3, 6. On February 28, 2008, Atlantic Specialty's counsel sent an e-mail and a letter by mail to Centillium's counsel asking it to agree to continue the hearing on its motion, to which there was no response. *Id.* ¶¶ 18-19. The former then left a voice mail for the latter, putting forth the same issue, the following day, but still received no response. *Id.* ¶ 19. On this day, February 29, 2008, the missing exhibits arrived,[3] three days late. *Id.* ¶¶ 3, 6.

Under Civil Local Rule 7-3, Atlantic Specialty's opposition was due on March 11, 2008. On March 5, 2008, Atlantic Specialty's counsel spoke with Centillium's counsel, who claimed ignorance regarding Centillium's meet-and-confer efforts, and declined to agree to continue the hearing. *Id.* ¶ 20. On March 6, 2008, Atlantic Specialty filed a Motion to Extend Time to Hear Plaintiff's Motion for Partial Summary Judgment, to continue the motion hearing to June 17, 2008.

---

[3] Atlantic Specialty's points and authorities indicates six missing, sealed exhibits, Mot. at 2:6-7, but Musser's declaration only indicates "certain" exhibits were missing, Musser Decl. ¶ 3.

*See* Docket No. 84 (the "Motion") at 1. As of the date of its motion, as it was still processing the 60,000 pages of Asian language documents, and preparing discovery requests based on them. Musser Decl. ¶¶ 13, 15. A settlement conference before Magistrate Judge Chen is set for March 31, 2008. *Id.* ¶ 17.

**LEGAL STANDARD**

Civil Local Rule 6-3 states:

(a) Form and Content. A motion to enlarge or shorten time may be no more than 5 pages in length and must be accompanied by a proposed order and by a declaration that:

    (1) Sets forth with particularity, the reasons for the requested enlargement or shortening of time;

    (2) Describes the efforts the party has made to obtain a stipulation to the time change;

    (3) Identifies the substantial harm or prejudice that would occur if the Court did not change the time; and

    ....

    (5) Discloses all previous time modifications in the case, whether by stipulation or Court order;

    (6) Describes the effect the requested time modification would have on the schedule for the case.

Civ. L.R. 6-3.

**ANALYSIS**

For the following reasons, the Court strikes Centillium's motion for partial summary judgment and denies as moot Atlantic Specialty's motion to allow it sufficient time to prepare to respond to Centillium's motion.

**I.     Analysis under Civil Local Rule 6-3.**

For the following reasons, were the Court not striking Centillium's motion for partial summary judgment, it would grant Atlantic Specialty's motion to continue the hearing on

Centillium's motion. Under Civil Local Rule 6-3, the Court analyzes four factors, and finds they all would support granting Atlantic Specialty's motion.

**A.     The reasons for the requested enlargement.**

Atlantic Specialty notes it only became involved in this matter on October 31, 2007, about five months ago and is still engaged in early discovery. Mot. at 4:6-9. Likewise, it notes, on November 21, 2007, Centillium said it had about 25,000 pages of documents, some in a foreign language, for which Atlantic needed to sign a protective order, to receive them. *See id.* at 4:10-13. Centillium then provided the order on November 28, 2007, and Atlantic signed it on December 18, 2007. Centillium then waited until January 14, 2008, however, then flooded Atlantic Specialty with 60,000 Japanese and Mandarin documents. *Id.* at 4:10-13.

It also notes the parties agreed to meet and confer on when to file cross-motions for summary judgment, as indicated in the January 18, 2008 case management order. *Id.* at 4:17-19. But, on February 26, 2008, Centillium filed its motion,[4] without meeting and conferring, while Atlantic Specialty was still processing the Asian documents, in order to propound discovery in their regard. *Id.* at 10-13, 17-19. Atlantic Specialty has thus asked the Court to continue the hearing on Centillium's motion to June 17, 2008, so it can continue discovery, and prepare a proper opposition to the motion.

In opposition, Centillium argues whether or not Atlantic Specialty has a duty to defend, turns only on Accton's complaint and the E&O policy, and not on any factual discovery. Docket No. 87 at 2:5-24 (Mem. in Opp'n to the Mot. ("Opp'n")). In the alternative, Centillium claims Atlantic has Centillium's initial disclosures, and thus needs no further discovery. *Id.* at 3:8-11. Further, Centillium argues any delay alleged by Atlantic Specialty is its own fault. *Id.* at 2:25-4:18. Specifically, Centillium alleges Atlantic "dragged its feet" in signing the protective order and in producing initial disclosures. *Id.* at 3:1-4, 3:25-4:3. Centillium also claims Atlantic has not diligently analyzed the 60,000 Asian documents, given it knew a large number of documents was

///

---

[4]     Atlantic Specialty claims exhibits were missing, Musser Decl. ¶¶ 3, 6, but Centillium disputes this, Ancar Decl. ¶ 8.

1  coming, and it allegedly has three or more attorneys on this matter. *Id.* at 3:11-24. Lastly, it argues
2  Atlantic has failed to particularly identify what discovery it seeks. *Id.* at 3:4-5.

3  Based on the foregoing, the Court first notes paragraph 5 of its Standing Order for civil cases
4  states, "All parties are expected to meet and confer before filing any motion before this court." It is
5  not within the parties' discretion to disregard this order. Further, the parties agreed in their Joint
6  Case Management Statement that they "anticipate cross-motions for partial summary judgment on
7  [the duty to defend] issue. The parties intend to file as soon as possible and will attempt to
8  coordinate on agreeable dates for cross-motions." Centillium makes no attempt to explain why it
9  completely disobeyed the Court's order and violated the parties' joint agreement.

10  In addition, the Court notes Centillium's failure to meet-and-confer is surprising, when it
11  knew it had 60,000 Asian documents, but told Atlantic less than half that number existed, then did
12  not provide them for almost a month after Atlantic signed the protective order. While Atlantic
13  Specialty could have proceed forward at a faster pace, this does not excuse Centillium's failure to
14  communicate or move at a reasonable pace.

15  With regards to Centillium's allegations that this matter requires no discovery or no further
16  discovery, Centillium has not provided any legal[5] or factual support which would allow the Court to
17  so find, and thus it does not. Nor do these assertions square with the fact Centillium produced
18  60,000 Asian documents, with no objections they were beyond the scope of reasonable discovery.
19  Lastly, in regards to Centillium's allegations that Atlantic Specialty has failed to particularly allege
20  the discovery it seeks, the Court finds it sufficient that Atlantic is preparing discovery based on the
21  60,000 Asian documents which Centillium felt required production. In conclusion, the Court finds
22  Atlantic Specialty has stated reasons to enlarge time.

23  **B.   The efforts made to obtain a stipulation.**

24  Atlantic Specialty's opposition was due March 5, 2008, and it made three attempts, starting
25  on February 28, 2008, to obtain a stipulation, two of which resulted in no response, and the third of
26  which resulted in a rejection. *See* Mot. at 4:20-22. Centillium does not dispute this.

---

[5]   Centillium's case citations may explain how a court addresses the duty-to-defend question, but do not speak to whether the parties in such cases need to conduct discovery.

7

### C. Identify the substantial harm or prejudice that would occur if the Court did not change the time.

Atlantic Specialty essentially argues Centillium jumped the gun by (1) filing its motion, without meeting and conferring, in violation of the parties' agreement; (2) filing too early in discovery, especially given its scope, i.e., the 60,000 Asian documents; and (3) filing so soon after Atlantic was added to Centillium's complaint. *See supra* part I.A. As a result, Atlantic claims it will be unfairly prejudiced in its ability to oppose Centillium's motion, absent an extension. Mot. at 4:23-26. Centillium makes two arguments in opposition. First, it argues its motion is similar to the one it filed against Atlantic Mutual, to which Atlantic Specialty has had access, since October. Opp'n at 4:10-14. Second, it argues delaying the hearing will delay putting legal issues before the Court, which will delay settlement.[6] *Id.* at 4:23-25.

The Court first notes, for the reasons discussed in part I.A, *supra*, Atlantic Specialty has demonstrated it will suffer an unfair prejudice, if the hearing is not continued. It is clear Atlantic Specialty needs more time to reasonably process the Asian documents, and conduct discovery, to adequately prepare an opposition to Centillium's motion. As for Centillium's first argument, that Atlantic Specialty should have anticipated the content of Centillium's motion, not only is this questionable, it does not address why Centillium chose not to meet and confer, which would have gone some distance towards avoiding the prejudice claimed here. As for Centillium's second argument, the Court does not find the conclusion follows from the assertion. Thus, the Court finds Atlantic Specialty has demonstrated it would suffer undue prejudice were the hearing on Centillium's motion not continued.

### C. Previous time modifications in the case.

After Centillium added Atlantic Specialty to this matter, they stipulated to extend the time to answer or respond from November 1 to 21, 2008. *See* Docket No. 64. On January 7, 2008, the

---

[6] Centillium also raises a third point, that Atlantic Specialty incorrectly claims the hearing should be continued to allow Atlantic to focus on the March 31, 2008 settlement conference, instead of having to prepare an opposition to Centillium's motion. Opp'n at 5:1-17. Centillium is correct. But, as the Court finds Atlantic's proffered reasons does not support continuing the hearing, the Court neither considers it, nor Centillium's counter-arguments to it, in the Court's analysis.

8

parties stipulated to continue the case management conference before Magistrate Judge Chen from January 11 to February 29, 2008. *See* Docket No. 70. Then, on January 25, 2008, they stipulated to continue it to March 31, 2008. *See* Docket No. 75. The Court finds these modifications do not argue against granting Atlantic Specialty's requested continuance.

### D. The effect on the schedule for the case.

As Atlantic Specialty notes, the dispositive motion cut off is September 9, 2008, well after the requested hearing date of June 17, 2008. Mot. at 5:4-7.

### E. Conclusion

For the foregoing reasons, were the Court not striking Centillium's motion for partial summary judgment, it would grant Atlantic Specialty's motion to continue the hearing on Centillium's motion, to avoid undue prejudice, and allow it more time to adequately prepare an opposition.

## II. The Court's Inherent Power to Control its Docket

*The Court's standing order mandates the parties shall meet and confer prior to filing any motion with the Court.* Centillium is absolutely bound by this order. Further, it agreed with both other parties, to comply with this method of practice, in the case management statement jointly filed in this matter. But even had it not, *any party's failure to follow this Court's orders will result in adverse consequences.* As the Ninth Circuit has held, where a party fails to follow a court's orders, "The district court has the inherent power sua sponte to dismiss a case for lack of prosecution." *Henderson v. Duncan*, 779 F.2d 1421, 1422-23 (9th Cir. 1986). Nonetheless, "[d]ismissal is a harsh penalty and is to be imposed only in extreme circumstances." *Id.* at 1423. As such, the Court will only strike Centillium's motion for partial summary judgment. As a result, Atlantic Specialty's motion is denied as moot. Should any party wish to file any further motions with the Court, it shall comply with all applicable local rules and standing orders of this Court or the Northern District. Further, such parties shall meet and confer prior to filing any motions with this Court.

///

///

///

**CONCLUSION**

Accordingly:

(1) the Court STRIKES Centillium's Motion for Partial Summary Judgment [Docket No. 80];

(2) the Court DENIES as moot the following pleadings:

    (a) Centillium's Ex Parte Motion to Seal Exhibits F, G, H, I, J, K and L to the Declaration of Katina Ancar [Docket No. 78];

    (b) Atlantic Specialty's Motion to Extend Time to Hear Plaintiff's Motion for Partial Summary Judgment [Docket No. 84]; and

    (c) Atlantic Specialty's Ex Parte Motion to File Certain Documents Under Seal [Docket No. 97]; and

(3) The hearing set for April 1, 2008, at 1:00 p.m., for Centillium's Motion for Partial Summary Judgment [Docket No. 80], is VACATED.

IT IS SO ORDERED.

March 17, 2008

                                      Saundra Brown Armstrong
                                      United States District Judge